IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| 4612 S. 88TH LLC, a Nebraska Limited Liability Company; and OO7, LLC, a Nebraska Limited Liability Company;<br><br>Plaintiffs,<br><br>vs.<br><br>TRI-STATE INSURANCE COMPANY OF MINNESOTA, an Iowa Corporation; and AUTO-OWNERS INSURANCE COMPANY, a Michigan Corporation;<br><br>Defendants. | **8:24CV245**<br><br>**MEMORANDUM AND ORDER** |

This is an insurance case involving a dispute over coverage from two wind and hail storms that occurred in 2019 and 2022 in Omaha, Nebraska.  It comes before the Court on Defendants' Tri-State Insurance Company of Minnesota ("Tri-State) and Auto-Owners Insurance Company ("Auto-Owners") motions to exclude expert testimony of Paul Douglas and Ryan Scribner.  Filing No. 88; Filing No. 91.  Defendants argue that Mr. Douglas's testimony is the only evidence Plaintiffs have to support their claims and since in their view his testimony should be excluded, they are also entitled to summary judgment on Plaintiffs' claims.  Filing No. 107; Filing No. 111.  Because these motions are intertwined, they will be analyzed together.  For the reasons stated herein, the Court denies these motions.

## I.    BACKGROUND

Plaintiffs are owners of commercial property in Omaha, Nebraska located at 4612 S. 88th Street for which Plaintiff 4612 S. 88th Street LLC is the owner, and 8811 J Street for which Plaintiff OO7 LLC is the owner.  Filing No. 27 at 2.  The property at 4612 S. 88th

1

Street is a one-story building with six bays encompassing approximately 25,000 square feet. Filing No. 98-1 at 60. The building at 8811 J Street is a one-story building with eight bays consisting of approximately 15,000 square feet. Filing No. 98-1 at 64. Plaintiffs allege that their properties were damaged by wind and/or hail storms that occurred on May 28, 2019, and June 7, 2022, to the extent that they are entitled to replacement cost coverage for the roofs under insurance policies issued by Defendants.

Defendants are insurance companies that issued policy coverage for the plaintiff properties during the periods of time in question. Tri-State provided coverage under Policy No. ADV 3188538 for both properties for the period of November 30, 2018, to November 30, 2019. Filing No. 110-2. The Tri-State Policy specifically excludes coverage for "loss or damage caused by or resulting from," *inter alia*, (1) "[w]ear and tear"; and (2) "[r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." Filing No. 110-2 at 113.

Auto-Owners provided coverage for the properties pursuant to policy No. 39626269-21 for the period of November 30, 2021, to November 30, 2022. Filing No. 153-4 at 9; 15. The Auto-Owners policy states that they "will not pay for cosmetic damage to roof surfacing caused by wind and/or hail." *Id.* at 22–23. That exclusion explains that "cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier . . .." *Id.*

It should be noted that each of the insurance company policies provided coverage for six separate buildings, but only two are currently the subject of this litigation. *See* Filing No. 110; Filing No. 153-4.

2

Defendants argue that they are not responsible for replacement coverage of the buildings because Plaintiffs cannot definitively show that the damage to the structures was a result of the 2019 and 2022 storms and not the result of regular "wear and tear," and to some extent whether the purported roof damage was more that "cosmetic."  Auto-Owners also argues that they are entitled to summary judgment because Plaintiffs made material misrepresentations in their insurance application.

Regarding the motions to exclude, Defendants argue that Plaintiffs' expert, Paul Douglas, a professional engineer, is not a reliable witness because he cannot state without exception which storm caused the damage to the properties.  Auto-Owners also request the exclusion of proffered expert Ryan Scribner, who is a general contractor and is offered as an expert to provide a dollar estimate for Plaintiffs' damages.

### ANALYSIS

### I.     STANDARD OF REVIEW

### A. Standard for Motion to Exclude Witnesses

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that:  (1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy.  *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of expert testimony bears

3

the burden of providing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck*, 338 F.3d at 860.

To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence "that the methodology underlying [the expert's] conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citations omitted). In making the reliability determination, the court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). Additional factors to consider include: "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008)).

"This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject" these factors as the particular case demands. *Russell*, 702 F.3d at 456 (citation omitted). When making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012). However, "conclusions and methodology are not

entirely distinct from one another.  Trained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[C]ases are legion" in the Eighth Circuit that "call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014).  "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 590).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 976 (8th Cir. 1995)).

District courts are "not to weigh or assess the correctness of competing expert opinions." *Id.*  The jury, not the trial court, should be the one to "decide among the conflicting views of different experts." *Kumho Tire Co.*, 526 U.S. at 153.

## B. Standard for Summary Judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "an adverse party cannot produce

5

admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp., 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex Corp., 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." Id. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir.

2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

## II.   ANALYSIS

### A. MOTION TO EXCLUDE PAUL DOUGLAS, PE and RYAN SCRIBNER

On March 17, 2025, Plaintiffs filed their expert disclosure pursuant to Rule 26(a)(2) identifying Paul Douglas and Ryan Scribner as expert witnesses. Filing No. 51 (notice); Filing No. 100-1 (disclosure). They also filed a rebuttal disclosure on May 30, 2025. Filing No. 63. Thereafter, Defendants took the deposition of Mr. Douglas on July 3, 2025. Filing No. 66. They took the deposition of Mr. Scribner on June 23, 2025. Filing No. 94.

Defendants move to exclude Plaintiffs' proffered expert, professional engineer, Paul Douglas. Mr. Douglas received a Bachelor of Science degree in civil engineering from the University of Nebraska in 1993. Filing No. 98-1 at 51. He is registered or licensed as a Professional Engineer in 28 states, including Nebraska. *Id.* He is a consultant for and the Director of Structural Engineering for Engineering Specialists, Inc. ("ESI") in Omaha, Nebraska. *Id.* Mr. Douglas has spent 15 years with ESI dedicating a majority of his work to forensic engineering projects which he describes as "investigations to determine why building structures or machines . . . fail to function in the way they were intended to." Filing No. 98 at 19. Mr. Douglas has conducted more than 1,000 forensic studies of properties with potential casualty losses with 75–90% of those investigations focused on potential wind and hail loss events. Filing No. 98 at 53. Defendants do not appear to challenge Mr. Douglas's qualifications or that they will aid the jury, but argue that his opinions are unreliable, speculative, and are more prejudicial and probative. Filing No. 89 at 2. Namely, Defendants take issue with the comment that Mr. Douglas

7

made at the end of his 2023 report which stated: "There is a slight degree of uncertainty in conclusions drawn from this examination. This is due to the length of time that passed between the occurrence of the loss and our inspection of the site." Filing No. 98-1 at 78.

Mr. Douglas personally inspected the buildings that are the subject of this lawsuit, and others, on April 26, 2023, with two other engineers from ESI. Filing No. 98-1 at 62 At that time, indentations were observed, and he took measurements and photographs to help determine the shape and cause of the indentations. Filing No. 98 at 117–18; 131. Mr. Douglas also reviewed weather data from May 28, 2019, and June 7, 2022. Filing No. 90-3 at 18.   He reviewed a report which included photographs by Nicholas Pontillo, P.E., who was retained by Tri-State to do a site inspection on July 14, 2021. Filing No. 98 at 22–23.   In addition, Mr. Douglas reviewed photographs of the buildings taken by a representative of Premier Claims. Filing No. 98 at 115.

Auto-Owners focuses on the age and the deteriorated conditions of the properties. Undoubtably, Defendants will submit evidence regarding the age of the roofs.   On the other hand, Plaintiffs, via Mr. Douglas's opinion and possibly other evidence, will submit contrary views indicating that the damage is from wind and hail.   Again, these types of factual disputes are obligation of the jury to determine and are not the basis for an exclusion of a witness.   *See Bonner*, 259 F.3d at 929*;* (quoting *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 976 (8th Cir. 1995)) (the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility).

Tri-State cites an unpublished decision, *Wilson v. State Farm Fire & Cas. Co.*, No. 21-CV-0062-CVE-SH, 2022 WL 1555816 (N.D. Okla. May 17, 2022), as instructive on this matter because it also deals with an insurance case in which an engineer was

8

proffered as an expert with regard to storm damage on a roof. The Court finds Defendants' reliance on *Wilson* neither controlling nor persuasive. The Oklahoma District Court found many deficiencies with the expert's report and proposed testimony that do not exist in the present case. Namely, the expert in *Wilson* disregarded photographic evidence taken by the claims adjuster closer to the date of the alleged loss and evidence relating to the age of the roof. There is no allegation that Mr. Douglas disregarded any evidence in the present case.

In addition, the Oklahoma court took issue with the lack of information in the expert's report regarding his actual observation of hail impact marks on the roof. Mr. Douglas's report and deposition indicate he did a personal inspection of the property and commented on the indentations and the likely sources of that damage.

Finally, the *Wilson* court was concerned that the expert's intentional use of incorrect or imprecise language in the expert report would likely mislead the jury. Again, no such allegation is made regarding Mr. Douglas's expert testimony.

Moreover, Defendants are able to impeach Mr. Douglas's testimony if they believe the age of the roofs and/or some other weather event contributed to the damage. The fact that the experts disagree on the cause of the roof damage does not render Mr. Douglas' opinion inadmissible. "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Crabar/GBF, Inc. v. Wright*, 142 F.4th 576, 587–88 (8th Cir. 2025) (quoting *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012)).

9

In this case, the Court finds that Mr. Douglas is qualified to offer his opinions and that, based on his knowledge, skill, and experience, he has sufficiently explained the bases of his opinions; that is, his reasons that the roof damage is consistent with hail damage and why they require replacement.  Therefore, the Court declines to exclude Mr. Douglas's opinions

Auto-Owners also moves to exclude Plaintiffs' expert Ryan Scribner.  Mr. Scribner is a general contractor and owner of Scribner Enterprises, Inc., which specializes in roofing installation and replacement.  Filing No. 100-1 at 46–49.  Mr. Scribner would testify about the necessary and reasonable costs for labor and material costs relating to the repair and replacement of the roofs.  *Id.* at 2.  Mr. Scribner has not been compensated for his opinions.  *See id.* at 3.  The only issue Auto-Owners has with Mr. Scribner's testimony is that he utilized Mr. Douglas's engineering report when he prepared his estimate for repair.  Filing No. 92 at 14.

It is clear from Mr. Scribner's disclosure and deposition that he is not going to provide expert testimony as to the condition of the roof himself.  He is going rely on Mr. Douglas's engineering report to opine on the types of repairs that would need to be done and estimate the material and labor costs associate therewith.  Filing No. 94 at 106–07; 210.

Because the Court has found that Mr. Douglas's expert opinions are admissible, Mr. Scribner's reliance on them for purposes of estimating the repair costs is appropriate. The Court declines to exclude Mr. Scribner's testimony.

Defendants will have the opportunity to vigorously cross-examine these witnesses, and Plaintiffs still have the burden of proof to show that a qualifying event caused the roof damage and that the damages are not speculative.

## B. MOTIONS FOR SUMMARY JUDGMENT

### 1. Breach of Contract

Defendants have moved for summary judgment arguing that as a matter of law Plaintiffs cannot show that the alleged storm damage occurred during the policy period.

To prevail on a breach of contract claim under Nebraska law, a plaintiff must: "plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *168th & Dodge, LP v. Rave Revs. Cinemas, LLC*, 501 F.3d 945, 950 (8th Cir. 2007) (quoting *Phipps v. Skyview Farms, Inc.*, 610 N.W.2d 723, 730 (Neb. 2000)).  In Nebraska, the interpretation of an insurance policy is a question of law. *Church Mut. Ins. Co. v. Clay Ctr. Christian Church*, 746 F.3d 375, 381 (8th Cir. 2014).  Once the insured establishes coverage, it is the insurer's burden to demonstrate that an exclusion applies. *Kaiser v. Allstate Indem. Co.*, 949 N.W.2d 787, 793 (Neb. 2020).  Nebraska law provides that an insurer cannot void a policy based upon a misrepresentation in an application "unless such misrepresentation or warranty deceived the company to its injury." Neb. Rev. Stat. § 44-358.  The Nebraska Supreme Court has clarified this statute, explaining that "in order for a misrepresentation by concealment to constitute a defense to an action on a contract of insurance, the insurer must plead and prove (1) that the misrepresentation was made knowingly with intent to deceive, (2) that the insurer relied and acted upon such statement, and (3) that the insurer was deceived to its injury." *Lowry v. State Farm Mut. Auto. Ins. Co.*, 421 N.W.2d 775, 778

11

(Neb. 1988).  A misrepresentation is material if the insurer would not have issued the policy had it been aware of the true facts." *Id.*

Here, wind and hail damage to the roofs is clearly a covered cause of loss under the policies. Filing No. 110-2 (Tri-State policy): Filing No. 153-4 at 22–23 (Auto-Owners policy).  Accordingly, this dispute centers on whether the alleged weather events occurred, whether they caused damage to the roofs, and whether certain exclusions apply that preclude coverage under the circumstances.

With respect to those issues, there are clear, material factual disputes.  Primarily, as discussed above, the parties dispute whether the roofs are damaged and if so, what caused the damage.  Plaintiffs contend the damage arises from specific wind and hailstorms in 2019 and 2022.  Defendants contend that the damages spring from the age of the structures, general wear and tear, and any number of known or unknown weather events.  Each side has put forth expert opinions that support their position.  Accordingly, this is a case involving a classic battle of the experts that will be for the factfinder to resolve.

With regard to the experts, Defendants argue that the testimony of Paul Douglas is the only evidence the Plaintiffs have concerning the alleged hail damage, and if his testimony is excluded, Plaintiffs have no evidence to move forward with trial.  As the Court has determined that Mr. Douglas's testimony will not be excluded at trial, Defendants' argument fails on that front.

Moreover, the Court finds that Plaintiffs have put forth enough evidence to survive summary judgment.

Citing several out of circuit cases, Tri-State argues that Plaintiffs cannot prove the alleged hail damage occurred during the policy period.  However, Plaintiffs have produced evidence that there were wind and hail events during the policy periods.  Specifically, Plaintiffs have put forth Mr. Douglas's opinion, which relies on National Oceanic and Atmospheric Administration information regarding a hailstorm on May 28, 2019, with 1–1 ½ inch hailstones.  Filing No. 90-3 at 18.  Similarly, Mr. Douglas relied on weather data showing that there was another storm with 1–1 ½ inch hailstones at the building site on June 7, 2022.  *Id.*

Tri-State also argues that any damage on the roofs is excluded due to "wear and tear."  Defendants have produced their own expert witnesses to forward this position; engineers.  Mr. Nicolas Pontillo (Tri-State) and Mr. Aaron Trenshaw (Auto-Owners). Filing No. 97-1 at 33–145; Filing No. 99 at 1–43.  Plaintiffs produced Mr. Douglas's storm damage evaluation dated May 12, 2023, which outlines each property and describes the damage at each property with corresponding photographs.  Filing No. 98-1 at 58–225.

Moreover, Defendants' own evidence belies its contention that Mr. Douglas's testimony is the sole evidence evincing damage to the Plaintiffs' properties. Evidence from claims adjuster Dean Stokebrand's investigation in April 2021 indicates that there was hail damage to the structures.  Filing No. 153-1 at 10, 11, 13, 14, 22.  In addition, Auto-Owners admitted there was some kind of storm damage in June 2022 insofar as they issued a check in the amount of $94,336.64 for coverage loss on September 14, 2023. Filing No. 153-5.

Again, there are questions of fact as to what damage was caused by what storm and whether or not there was pre-existing damage due to age of the roofs or other events.

13

This is the crux of the various expert opinions. These competing opinions confirm a material factual dispute that precludes summary judgment on the breach of contract claims.

### 2. Material Misrepresentations

Auto-Owners allege that Plaintiffs identified three prior loss events in 2019, 2020 and 2021, but omitted the May 2019 storm claim which is at issue in this case. Filing No. 153-3 at 7–8. In addition, Auto-Owners allege that Plaintiffs misrepresented that appointments had been made to get the roofs replaced. *Id.* at 8. Although not specifically requested, Auto-Owners are requesting recission of the insurance contract because the alleged material misrepresentations render the policy void. *See* Filing No. 112 at 12.

With regard to Auto-Owners' claim of misrepresentation in the insurance application, the Court similarly finds that there are questions of fact. Auto-Owners relies upon the proposition that "[a] misrepresentation is material if the insurer would not have issued the policy had it been aware of the true facts." *Lowry*, 421 N.W.2d at 778.

The Court finds that the evidence presented does not establish, as a matter of law, that the misrepresentation was material. The only evidence Auto-Owners submits in support of their contention is the affidavit of Travis Groen, Branch Underwriting Manager. Filing No. 153-6 at 2. Mr. Groen indicates in paragraph 4 that:

> In the Loss History section of the Application, 4612 S. 88th Street, LLC failed to disclose the occurrence of 2019 loss and claim thereupon made to Tri-State Insurance Company. In addition, regarding the condition of the properties' roofs, 4612 S. 88th Street, LLC affirmatively represented that appointments had been made to repair roofs.

*Id.* Mr. Groen goes on to state that "Auto-Owners would not have issued [a policy] had the applicant provided the omitted Loss History been included in the Application." *Id.* Not

14

only does that statement make no sense, but also it is so vague that it does not present sufficient probative value to justify summary judgment. The evidence does not establish that had Auto-Owners been informed of the May 2019 storm claim, the policy would not have been issued. There is no reference to their underwriting guidelines for the policy at issue that would be a basis for non-issuance. And there is no reference regarding statements about the appointment for repairs. Finally, there is no specificity regarding what buildings (i.e. which roofs) Mr. Groen considered in reaching his opinion.

But even if Auto-Owners could show they relied on the false statements to their detriment, the evidence does not show as a matter of law that the Plaintiffs made the misrepresentations knowingly with the intent to deceive. The Nebraska Supreme Court has set a rather high standard for a knowing, intentional deception of an insurer. *See Nat'l Indep. Truckers Ins. Co. v. Gadway*, 860 F. Supp. 2d 946 (D. Neb. 2012). In that case, the Nebraska District Court considered a policy application by Gadway, an over-the-road trucker, for commercial insurance coverage. *Id.* at 948. Gadway, the sole-proprietor of a trucking company, was asked to list on a policy questionnaire all accidents that he or any driver working for him had been in during the past five years. *Id.* Gadway owner indicated "none" on the form, but he had been involved in an automobile accident and cited for a traffic violation approximately four months prior to the application. *Id.* In *Gadway,* the court was skeptical regarding Gadway's decision to withhold the information from the insurance company but found that its "skepticism does not permit it to conclude, as a matter of law, that Gadway acted knowingly with intent to deceive National. Questions of subjective intent can rarely be decided by summary judgment." *Id.* at 952; *citing Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

15

Viewing the evidence in a light most favorable to Plaintiffs, the Court cannot say that they acted with an intent to deceive. The deposition excerpts of Mr. James Barger and Ms. Cathy O'Donnell, Plaintiffs' employees who evidently had the ability to bind the Plaintiffs, do not provide the requisite intent. Mr. Barger testified he believes Ms. O'Donnell completed the application and he was not aware where she got the dates of loss or why she omitted the May 27, 2019 claim. Filing No. 153-2 at 17. Moreover, Mr. Barger did not know anything about the roof replacement appointments. *Id.* at 18. Similarly, Ms. O'Donnell did not recall why she didn't include the May 27, 2019 claim on the insurance application. Filing No. 152-6 at 15. With regard to the appointments to replace the roofs, Ms. O'Donnell indicated that some of the roofs had been replaced but didn't recall what year. *Id.* at 16.

The Court agrees with the Nebraska Supreme Court that the question of intent is better suited for the trier of fact. *Lowry*, 421 N.W.2d at 779.

**CONCLUSION**

For these reasons, the Court finds that Paul Douglas and Ryan Scribner are qualified to offer their opinions in their respected fields; that based on their knowledge, skill, and experience, they have sufficiently explained the bases of their opinions; and that these opinions are sufficiently reliable to aid the jury. Therefore, the Court declines to exclude Mr. Douglas's and Mr. Scribner's opinions.

In addition, the Court finds that there are material factual disputes with regard to the breach of contract and material misrepresentation claims which preclude the granting of summary judgment.

16

Accordingly,

IT IS ORDERED:

1.  Tri-State's Motion to Exclude, Filing No. 88, is denied

2.  Auto-Owners' Motion to Exclude, Filing No. 91, is denied

3.  Tri-State's Motion for Summary Judgment, Filing No. 107, is denied.

4.  Auto-Owners' Motion for Summary Judgment, Filing No. 111, is denied.


Dated this 26th day of May, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge
